[No. B107385. Second Dist., Div. Six. Apr. 18, 1997.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
JOHN FREDERICK MUDGE, Real Party in Interest.

408

**COUNSEL**

Barry T. LaBarbera, District Attorney, for Petitioner.

Edward R. Jagels, District Attorney (Kern), as Amicus Curiae on behalf of Petitioner.

James B. Lindholm, Jr., County Counsel, and Ann Duggan, Deputy County Counsel, for Respondent.

Samuel T. Crump as Amicus Curiae on behalf of Respondent.

John Frederick Mudge, in pro. per., for Real Party in Interest.

## OPINION

**YEGAN, J.**—Code of Civil Procedure section 170.65 subdivision (a), enacted in 1995, and recodified in 1996 provides: "A retired judge shall not hear and try any criminal cause when it is stipulated jointly by the prosecuting attorney and the defendant and his or her counsel, and submitted to the court as hereinafter provided, that the retired judge is not capable or qualified to hear and try the criminal cause." This statute has a "sunset" provision, i.e., it "shall remain in effect until January 1, 2001, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 2001, deletes or extends that date." (Code Civ. Proc., § 170.65, subd. (c).)[1]

We conclude that the sun shall set sooner on section 170.65. This legislative experiment substantially impairs the Chief Justice's constitutional power to appoint retired judges who he determines are "capable and qualified." A stipulation filed pursuant to the statute is evidentiary in nature and specific to the assigned retired judge. It cannot be reconciled with the Chief Justice's implied factual determination that the assigned retired judge is possessed of his or her faculties so as to render him or her "capable and qualified." We thus agree with the trial court's ruling and hold that section 170.65 is unconstitutional.

■ Before proceeding to the merits of the writ petition, we must disclose that the members of this court belong to the California Judges Association which has filed an amicus curiae brief in support of the trial court's ruling. Our membership in this organization does not disqualify us from acting here. Section 170.2, subdivision (a) provides: "It shall not be grounds for disqualification that the judge [or justice]: [¶] (a) Is or is not a member of a racial, ethnic, religious, sexual or similar group and the proceeding involves the rights of such a group." The majority of trial judges and appellate court justices of this state, approximately 90 percent according to the California Judges Association's amicus curiae brief, are members of the California Judges Association. Some appellate panel must hear the case and the rule of necessity allows us to do so here. (See *Olson* v. *Cory* (1980) 27 Cal.3d 532, 537 [178 Cal.Rptr. 568, 636 P.2d 532], citing *Atkins* v. *United States* (1977) 556 F.2d 1028, 1036 [214 Ct.Cl. 186] ["The rule of necessity . . . means that a judge is not disqualified to try a case because of his [or her] personal interest in the matter at issue if there is no other judge available to hear and decide the case."].)

Real party in interest, John Frederick Mudge, is charged with various counts of forgery in respondent court, which is a five-judge court. The

---

[1]All statutory references are to this code.

record shows a dismal inability of the justice system to get this criminal case tried. One judge disqualified himself. Both sides exercised peremptory challenges to judges. In addition, real party challenged another assigned retired trial judge for cause. That judge did not contest the challenge and by operation of law, consented to disqualification. (§ 170.3, subd. (b)(4).) Then, real party challenged the instant retired assigned judge, the Honorable Harry E. Woolpert, for cause.[2] Another superior court judge denied the challenge for cause.

Thereafter, the parties entered into a stipulation that "the Honorable Harry E. Woolpert retired is not capable or qualified to hear and try the above captioned case." This challenge was not allowed. The Presiding Judge of the San Luis Obispo Superior Court, the Honorable Michael L. Duffy, both orally and by written opinion, declared section 170.65 to be unconstitutional. The People petitioned for an extraordinary writ. We issued an alternative writ of mandate, stayed the trial, heard argument, and now file our opinion.

■ " '[A]ll presumptions and intendments favor the validity of [the] statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' [Citations.]" (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247].) The judiciary may not second-guess the wisdom of statutes passed by the Legislature. (*Superior Court* v. *County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].) Nevertheless, unless a higher court has upheld the constitutionality of a statute, it is the obligation of the trial and appellate courts to independently measure legislative enactments against the Constitution and, in appropriate cases, to declare such enactments unconstitutional. (*Byers* v. *Board of Supervisors* (1968) 262 Cal.App.2d 148, 157 [68 Cal.Rptr. 549].) "It is the duty of [all] courts to maintain supremacy of the Constitution. [Citations.]" (*Id.* at p. 157.)

Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." In association with this separation of powers principle of government, article VI section 6 of the California Constitution expressly grants the Chief Justice the constitutional power to

---

[2]By order (No. 1740-96), signed November 18, 1996, Chief Justice Ronald M. George appointed the Honorable Harry E. Woolpert, retired judge of the Superior Court, County of San Luis Obispo, to sit as a judge thereof from November 18, 1996, to November 27, 1996, and from December 2, 1996, to December 20, 1996, and ". . . until completion and disposition of all causes and matters heard pursuant to this assignment."

administer the assignment of judges. It provides: "The Chief Justice may provide for the assignment of any judge to another court but only with the judge's consent if the court is of lower jurisdiction. A retired judge who consents may be assigned to any court."

■ The assignment of a retired judge to act temporarily as a regular sitting judge is sui generis. That is to say, such a judge is unlike a judge who is either appointed or elected to office. "The manner, method, or criteria for selection of duly qualified assigned judges is within the inherent power of the Supreme Court and within the discretion of the Chief Justice in the exercise of her [or his] constitutional authority to make the assignments." (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 483 [159 Cal.Rptr. 494, 601 P.2d 1030], fn. omitted; see also *People* v. *Ferguson* (1932) 124 Cal.App. 221, 231 [12 P.2d 158] [Chief Justice has "discretion of the broadest character" in the assignment of judges].)

■ By enacting section 170.65, the Legislature has determined that the parties to a criminal action can veto the Chief Justice's constitutional assignment, i.e., they can erase the Chief Justice's signature from the written assignment. Generally, this "chills," i.e., substantially impairs, the Chief Justice's constitutional power. In the particular case it "freezes", i.e., actually defeats, the Chief Justice's constitutional power. Mr. Witkin says that ". . . the Legislature may not exercise its power so as to interfere with the independence of the judiciary. [Citation.]" (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 111, p. 163.) This is what the Legislature has done here. Upholding the constitutionality of section 170.65, would have the effect of adding the following language to article VI, section 6 of the California Constitution: "However, in criminal cases, the Chief Justice's assignment may be vetoed upon the parties' stipulation." It is inappropriate for the Legislature, by statute, or this court, by opinion, to add language to the California Constitution.

It is true that "[t]he Legislature may adopt reasonable rules and regulations regarding the disqualification of judges [citation]" (*Johnson* v. *Superior Court* (1958) 50 Cal.2d 693, 696 [329 P.2d 5]; *Superior Court* v. *County of Mendecino*, *supra*, 13 Cal.4th at p. 56) as long as it does not defeat or materially impair the judicial function. (13 Cal.4th at pp. 55, 58.) Phrased otherwise, our Supreme Court has said that any legislative regulation must not "substantially impair" an express provision of the California Constitution. (*Sacramento etc. D. Dist.* v. *Superior Court* (1925) 196 Cal. 414, 432 [238 P. 687]; *In re Lance W.* (1985) 37 Cal.3d 873, 891 [210 Cal.Rptr. 631, 694 P.2d 744].)

In *Superior Court* v. *County of Mendocino*, *supra*, 13 Cal.4th 45, the California Supreme Court identified those instances where it was permissible for the Legislature to regulate the judicial function: when the trial courts

shall be in session (*Superior Court* v. *County of Mendocino*), admission to practice law (*Brydonjack* v. *State Bar* (1929) 208 Cal. 439 [281 P. 1018, 66 A.L.R. 1507]), peremptory challenge to a trial court (*Johnson* v. *Superior Court, supra,* 50 Cal.2d 693), fixing of a punishment for contempt of court (*In re McKinney* (1968) 70 Cal.2d 8 [73 Cal.Rptr. 580, 447 P.2d 972]). (13 Cal.4th at pp. 54-57.) In each of these instances there was no substantial impairment of a separate and distinct constitutional provision. Here there is.

While the filing of a stipulation pursuant to section 170.65 might not have as great a potential for materially impairing the functions of the court in the larger counties, it may have such an effect in the smaller counties. There is no limitation on how many times the parties may file a section 170.65 stipulation. Thus, if the Chief Justice makes five assignments to the County of San Luis Obispo, the parties could veto all five assignments by filing stipulations. This would materially impair the judicial function. The instant case illustrates how even the single use of a section 170.65, may do so.

We have examined the legislative history of the statute and observe that there appears to have been two motivating factors for its enactment. First the Legislature believed that the parties were entitled to a trial judge who would "answer to the electorate." (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 1736 (1995-1996 Reg. Sess.) June 6, 1995, p. 2.) This premise demonstrates that the statute cannot withstand constitutional scrutiny. Although prior to retirement all judges may have to "answer to the electorate," a retired judge appointed by the chief justice is no longer subject to election. This is the case whether or not the parties seek to disqualify the judge through a section 170.65 stipulation. If a retired judge must be answerable to the electorate, then the Chief Justice's constitutional power could never be exercised.

We parenthetically observe that the thought that a retired judge would abuse his or her power because he or she would not be accountable to the electorate impugns the integrity of all assigned retired judges. History has shown that assigned retired judges sitting at all levels of the California judiciary have performed with the highest levels of integrity, fairness, and scholarship. As stated by the late Chief Justice, Phil S. Gibson, retired judges "render valuable assistance to the courts with savings to the taxpayers." (Gibson, *For Modern Courts* (1957) 32 State Bar J. 727, 732.) Before enacting section 170.65, the Legislature should have explored the question posed by its staff on the Senate Committee on Criminal Procedure: "Will this interfere with the Chief Justice's constitutional right to assign a retired judge to any court?" (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 1736 (1995-1996 Reg. Sess.) June 6, 1995, p. 5.)

Second, the Legislature also appears to have been motivated by the California District Attorney's Association claim that "unlike active judges who deal daily with the constantly changing state of California criminal law and procedure, retired judges, who sometimes sit irregularly or infrequently, often are not familiar with recent changes in criminal law, which works to the disadvantage of both parties." (Sen. Com. on Criminal Procedure, Analysis of Assem. Bill No. 1736 (1995-1996 Reg. Sess.) June 6, 1995, p. 4.)

There is but little doubt that the laws relating to criminal procedure are complex. (E.g., *People* v. *Rosbury* (1997) 15 Cal.4th 206 [61 Cal.Rptr.2d 635, 932 P.2d 207].) This, however, does not translate into the proposition that an assigned retired judge is not "capable or qualified" to listen to evidence, consider changes in the law, independently research the issues, and make a sound legal ruling. Effective January 1, 1996, the Chief Justice promulgated "standards and guidelines for judges serving on assignment." These standards and guidelines discuss eligibility to sit on assignment, continuing judicial education requirements, and provide for a signed agreement that the assigned retired judge ". . . will maintain familiarity with current statutes, case law, court rules, court procedures, and comply with the continuing education requirements. . . ." (Retired Judge Application to Serve on Assignment.) These procedures were in place prior to the assignment of retired Judge Woolpert. It is presumed that he complied with the standards and guidelines and the signed agreement.

The Legislature's choice of words, while offensive to the individual targeted assigned retired judge, probably derives from the Supreme Court opinion in *Austin* v. *Lambert* (1938) 11 Cal.2d 73 [77 P.2d 849, 115 A.L.R. 849], which struck a predecessor statute to section 170.6 (peremptory challenge) because it empowered the litigant to disqualify " 'without reason or for an undisclosed reason' . . . ." (*Johnson* v. *Superior Court, supra*, 50 Cal.2d 693, 698; see also *Daigh* v. *Shaffer* (1937) 23 Cal.App.2d 449 [73 P.2d 927].) The words chosen by the Legislature do not say that the parties *believe* that the particular retired judge is "not capable or qualified." It purports to be an evidentiary stipulation reciting the *fact* that the particular retired judge is "not capable or qualified." Retired Judge Woolpert has served 20 years as a judge, serving on just about every calendar available including criminal law and motion and trials. We have reviewed his cases since 1983, when this division was created. In our view, he is "capable and qualified" as a matter of law. No stipulation to the contrary can change this fact.

Our holding that section 170.65 is unconstitutional works no hardship on the parties to a criminal action. There remain three ways to disqualify an

assigned retired judge in a criminal case. The assigned retired judge may recuse himself or herself because the judge is disqualified for the reasons set out in the Code of Civil Procedure. (See § 170.1.) The parties may challenge the assigned retired trial judge for cause. (See § 170.3, subd. (c)(1).) The parties may peremptorily challenge the assigned retired trial judge. (§ 170.6.) These are three significant arrows in the disqualification quiver. We simply remove the defective fourth arrow. The trial court correctly ruled that section 170.65 was unconstitutional.

Almost 60 years ago, Justice Plummer authored the opinion in *Daigh* v. *Shaffer, supra*, 23 Cal.App.2d 449, which struck another disqualification statute. His eloquence is apposite today: "[T]he empowering upon attorneys and litigants of arbitrary action, . . . militate[s] not only against the independence of the judiciary as a coordinate branch of the government, . . . [it] also tend[s] to obstruct the orderly administration of justice . . . . The rights of all of the parties and of the public as well must be considered instead of simply the arbitrary action of the attorney[s] or litigant[s] who [seek] to remove a qualified judge from hearing a particular case." (*Id.,* at p. 463.)

The alternative writ is discharged. The request for a peremptory writ is denied. The stay order is vacated.

Stone (S. J.), P. J., and Gilbert, J., concurred.

On May 9, 1997, the opinion was modified to read as printed above.