Filed 9/4/13  P. v. Halgas CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HAROLD DAVID HALGAS,<br><br>    Defendant and Appellant. | D062221<br><br><br>(Super. Ct. No. SCD226992) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Szumowski, Judge.  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Harold David Halgas appeals a sentencing order after entry of a negotiated guilty plea. He contends he is entitled to conduct credits under Penal Code section 4019[1] for the 10 days he spent in a nonpenal residential substance abuse treatment program as a court-ordered condition of probation. We conclude that the issuance of conduct credits for nonpenal residential substance abuse treatment is not statutorily authorized by section 4019 and, under the circumstances presented here, is not required by equal protection. Therefore, we affirm.

FACTS

In June 2010, Halgas pleaded guilty to assault with force likely to cause great bodily injury. (§ 245, subd. (a)(1).) He was sentenced to three years in prison, suspended, and ordered to serve 180 days in jail. Halgas was confined in county jail for 90 days and released on probation.

Halgas had chronic alcohol problems and did not consistently report to his probation officer. He was jailed for eight days in September and October 2010 and for six days in December 2010.

At a revocation hearing held on December 16, 2010, the court required Halgas to waive the 104 days of section 4019 conduct credits he had accumulated to that date. The court credited the defendant with 104 days of section 2900.5 custody credits and reinstated probation. The December 16 minute order states, "Defendant waives all past, present and future [Penal Code section] 4019[, subdivisions] (b)(1)[ and ](c)(1) credits." The report of waiver of *future* conduct credits was repeated in subsequent probation reports and minute orders.

---

[1]     Unless otherwise indicated, further statutory references are to the Penal Code.

Halgas continued to violate the terms and conditions of his probation. In 2011, he was confined in county jail from February to May, and again in June and July. At a revocation hearing held in February 2011, Halgas asked for commitment to the Serial Inebriate Program (SIP), a residential drug treatment program funded by the City and County of San Diego.[2] The court ordered Halgas to be released to the SIP program representative or to the probation department when a bed became available in that program. Halgas was released in May 2011, after serving 106 days in jail. He did not enter SIP.

At a probation revocation hearing held on June 22, Halgas said that he was not accepted at SIP because of his record.[3] The court revoked and then reinstated probation on the condition Halgas complete a residential treatment program of at least six months duration. Halgas remained in county jail until July 25, 2011, when he entered the Tradition One residential drug treatment program (Tradition One). He left Tradition One on August 4 (after 10 days) and failed to report to probation. Later that month, he was cited for offenses related to public drinking. Halgas was committed to county jail from September 2011 to January 2012 and again from April to May 2012.

In April 2012, the court revoked Halgas's probation. In May, the court sentenced him to two years in prison and awarded him 394 custody credits. The court found that Halgas previously waived his section 4019 conduct credits, but would receive them from "today forward."

---

[2]     (See <http://www.sandiego.gov/sip/history.htm>, as of Aug. 30, 2013.

[3]     SIP is designed for individuals who have been arrested for public intoxication more than four times in a 12-month period. (<http://www.sandiego.gov/sip/howsipworks.htm>, as of Aug. 30, 2013.)

Halgas filed a notice of appeal in June 2012.  In January 2013, he filed a motion in the trial court to correct the award of section 4019 credits, explaining his waiver of conduct credits on December 16, 2010, was for credits earned to that date and not thereafter.  Halgas asked for conduct credits for the following days:  December 11 to 16, 2010, February 12 to May 28, 2011, June 16 to July 25, 2011, September 28, 2011 to January 10, 2012, and April 19 to June 7, 2012.  He did not include in his request the days he spent in Tradition One (July 26 to Aug. 4, 2011).  On January 10, 2013, the court granted Halgas's request for a credit adjustment, adding 278 days to the credits awarded on May 17, 2012.[4]

## DISCUSSION

### A

### *Contentions on Appeal*

Halgas contends he is entitled to *conduct* credits for the time he spent at Treatment One as a court-ordered condition of probation.  He acknowledges, and the record shows, that the trial court credited him with *custody* credits for the time he spent at that facility.[5]  Halgas also acknowledges that the plain language of section 4019 does not authorize the award of *conduct*

---

[4]     On June 6, 2013, this court asked the parties to submit simultaneous letter briefs addressing whether defendant, in its motion of January 3, 2013, asked the trial court to award section 4019 conduct credits for the time he spent at Tradition One from July 26 to August 4, 2011 and, if not, whether section 1237.1 precluded raising the issue on appeal.

Section 1237.1 prohibits a defendant from appealing an error in the calculation of presentence custody credits unless the defendant first files the claim in trial court.  Contrary to the People's assertion that Halgas is seeking *custody* credits, Halgas's claim on appeal concerns only *conduct* credits.  By its plain terms, section 1237.1 applies only to "an error in the calculation of presentence custody credits" and does not bar Halgas's claim.

[5]     Accordingly, we need not consider the People's argument that Halgas was not "in custody" when he was at Tradition One and was therefore not entitled to custody credit under section 2900.5.

credits for time spent in a nonpenal residential treatment facility such as Tradition One. Halgas argues, however, that when section 4019 is read together with section 2900.5, the statutory framework requires the award of *conduct* credits for the time he spent at Tradition One. Alternatively, Halgas argues if he is not statutorily entitled to section 4019 conduct credits, principles of equal protection mandate the award of such credits.

Because the issues raised concern questions of statutory interpretation and constitutional law, our review is de novo. (*People v. Roberts* (2010) 184 Cal.App.4th 1149, 1176; *People v. Superior Court* (*Mudge*) (1997) 54 Cal.App.4th 407, 411.)

B

*Legal Framework for Custody and Conduct Credits*

Section 2900.5 governs the award of custody credits. It provides that in all felony and misdemeanor convictions, when the defendant has been in custody, including but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, *rehabilitation facility*, hospital, prison, juvenile detention facility or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, credited to the period of confinement under section 4019, and days served in home detention, shall be credited to the defendant's term of imprisonment or credited to any fine on a proportional basis. (*Id.*, subd. (a).)

Section 4019 governs the award of work and behavior credits (collectively referred to as conduct credits). (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3; *Payton v. Superior Court* (2011) 202 Cal.App.4th 1187, 1189, fn. 1.) A prisoner may earn conduct credits when he or she "is confined in or committed to a county jail, industrial farm, or road camp, or any city jail,

5

industrial farm, or road camp" by performing additional labor and maintaining good behavior. (§ 4019, subds. (a), (b) & (c); *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395.) Section 4019 does not authorize the award of conduct credits for time spent in nonpenal institutions. (*People v. Sage* (1980) 26 Cal.3d 498, 502-503; *People v. Moore* (1991) 226 Cal.App.3d 783, 785 (*Moore*) [conduct credit for time spent in nonpenal institutions is not authorized]; *People v. Mobley* (1983) 139 Cal.App.3d 320, 323 (*Mobley*) [good time/work time credit is not statutorily authorized for confinement in a residential facility]; *People v. Palazuelos* (1986) 180 Cal.App.3d 962, 966 (*Palazuelos*) [§ 4019 applies only to time in custody in specified places]; *People v. Downey* (2000) 82 Cal.App.4th 899, 920 (*Downey*) [defendant is not statutorily entitled to conduct credit for time served as a condition of probation in a nonpenal rehabilitation program].)

Halgas argues that section 2900.5 directs the court to award a defendant conduct credits for time spent in a nonpenal residential treatment facility. Although his argument is not entirely clear, Halgas appears to claim he is entitled to an award of *conduct* credits for the time he spent at Tradition One by virtue of the language in section 2900.5 that directs the court to award custody credits for time spent in a "rehabilitation facility," "including days served as a condition of probation in compliance with a court order, *credited to the period of confinement pursuant to Section 4019*, and days served in home detention . . . ." (§ 2900.5, subd. (a), italics added.)

Halgas reads the clause "credited to the period of confinement pursuant to Section 4019" as mandating an award of *conduct* credits for any time spent in a rehabilitation facility.

6

(§ 2900.5, subd. (a).)  His reading is contrary to well-established principles of statutory construction.

The first step in construing a statute is to scrutinize the words of the statute, giving them a plain and commonsense meaning.  (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.)  If the language is clear and unambiguous, the plain meaning of the statute governs.  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)  By its plain terms, section 2900.5, subdivision (a) directs the court to credit "all days of *custody* of the defendant" to his or her jail term, including those credited to the period of confinement under section 4019.  (§ 2900.5, subd. (a), italics added.)  Thus a defendant is entitled to *custody* credits for days confined in the facilities described in section 4019.

To the extent section 2900.5 is ambiguous, the specific statute controls over a more general statute that only generically encompasses the same subject.  (*Songstad v. Superior Court* (2001) 93 Cal.App.4th 1202, 1209.)  Because a more specific statute controls over a more general one (*Lake v. Reed* (1997) 16 Cal.4th 448, 464), we determine that section 2900.5 does not govern the award of *conduct* credits.  By the plain terms of section 4019, an award of conduct credits is limited to prisoners confined in or committed to city or county jails, industrial farms or road camps.  (§ 4019, subd. (a).)  Section 4019 also provides that conduct credits may not be awarded to prisoners who do not satisfactorily perform labor as assigned by, and/or comply with the reasonable rules established by, the sheriff, chief of police or superintendent of an industrial farm or road camp (superintendent).  (§ 4019, subds. (b) & (c).)  Obviously, a sheriff, chief of police or superintendent does not assign labor or establish rules at a *nonpenal* rehabilitation facility.  Limiting the award of conduct credits to prisoners described

7

by section 4019 comports most closely with the apparent intent of the Legislature and avoids an interpretation that would lead to absurd consequences. (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272.)

The cases cited by Halgas in support of his argument that the statutory framework authorizes conduct credits for time spent in nonpenal institutions as a court-ordered condition of probation do not assist him. *People v. Sylvestry* (1980) 112 Cal.App.3d Supp. 1 (*Sylvestry*) concerns the award of custody credits under section 2900.5, not conduct credits under section 4019.[6] *Downey* concerns an award of conduct credits for confinement in a custodial substance abuse treatment facility on equal protection grounds. The reviewing court there expressly held that the defendant was not statutorily entitled to conduct credits under section 4019. (*Downey, supra,* 82 Cal.App.4th at pp. 920-921.)

Having determined that Halgas is not statutorily entitled to section 4019 conduct credits for the 10 days he spent at Tradition One, we now address the question whether principles of equal protection mandate the award of conduct credit for Halgas's confinement in a nonpenal residential treatment program.

D

*Equal Protection*

Halgas raises two equal protection arguments. First, Halgas challenges the Legislative classification in section 4019 awarding conduct credits to persons confined in state-run rehabilitation facilities but denying conduct credits to persons confined in nonpenal

___

[6]     *Sylvestry* upheld the trial court's determination the defendant should be awarded *custody* credit for time served in a residential rehabilitation facility because it was a custodial facility within the terms of section 2900.5, subdivision (a). (*Sylvestry, supra,* 112 Cal.App.3d at pp. Supp. 6-7, disagreed with by *Palazuelos, supra,* 180 Cal.App.3d at p. 965.)

8

rehabilitation facilities. Second, Halgas contends he is similarly situated to a defendant committed to a state-run residential treatment program but did not receive like treatment. Specifically, Halgas asserts that had he been confined in a state-run residential treatment program, he would have received conduct credits and would have served less custodial time. (See *Mobley*, *supra*, 139 Cal.App.3d at p. 323.) We first address Halgas's challenge to the constitutionality of the statutory scheme.

The Legislature may make reasonable classifications of persons, provided the classifications are made with a legitimate goal to be accomplished. (*People v. Spears* (1995) 40 Cal.App.4th 1683, 1687.) " 'As both the United States Supreme Court and the [California Supreme Court] have explained on many occasions, "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classifications*." ' " (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481-482.) In addition, " 'under the rational relationship test, the state may recognize that different categories or classes of persons within a larger classification may pose varying degrees of risk of harm, and properly may limit a regulation to those classes of persons as to whom the need for regulation is thought to be more crucial or imperative.' " (*Id.* at p. 482.) Every presumption is made in favor of the validity of the statute. (*Moore, supra,* 226 Cal.App.3d at p. 787.)

Section 4019 authorizes conduct credits for prisoners confined in or committed to a city or county jail, industrial farm or road camp, but does not authorize such credits for time spent in custody in nonpenal institutions, such as rehabilitation facilities or similar residential

9

institutions.  (*Palazuelos*, *supra*, 180 Cal.App.3d at p. 964.)  Conduct credits may be denied if the prisoner refuses to satisfactorily perform labor as assigned by, or has not complied with reasonable rules and regulations established by, the sheriff, chief of police or superintendent of an industrial farm or road crew.  (§ 4019, subds. (b) & (c).)

This statutory classification does not violate equal protection.  (*Moore*, *supra*, 226 Cal.App.3d at p. 787; *People v. Broad* (1985) 165 Cal.App.3d 882, 884 (*Broad*).)  The purpose of granting conduct credits to prisoners receiving substance abuse treatment is to promote good behavior and work ethic during the period of incarceration.  In contrast, the purpose of court-ordered substance abuse treatment as a condition of probation is to restore the defendant's mental and physical health and avoid incarceration.  Nonpenal treatment facilities are not structured to determine whether a person merits the award of conduct credits under the Penal Code.  "The concept of giving or taking away time credits might interfere with principles central to operation of the rehabilitation program.  Denial of credits involves administrative requirements which the facility may not be equipped to meet.  Further, the rationale for affording such credits is absent:  the threat of removal from the program is alone sufficient to deter misbehavior, without holding out the possibility of conduct credits for that purpose."  (*Broad,* at p. 884.)  In addition, the Legislature could reasonably determine that those receiving substance abuse treatment in nonpenal facilities as a condition of probation have their own incentives for good behavior, including fulfilling the terms of their probation and avoiding imprisonment in a county or state facility.  (*Moore*, at p. 787.)  Thus there is a reasonably conceivable state of facts that provides a rational basis for the classifications sufficient to withstand an equal protection challenge.  (*Kasler v. Lockyer*, *supra*, 23 Cal.4th at pp. 481-482.)

10

We next address Halgas's argument that he was denied equal protection because he was similarly situated to a defendant who was confined in a state-run residential treatment program but did not receive like treatment.

Equal protection recognizes the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. (*Moore*, *supra*, 226 Cal.App.3d at p. 786; *In re Gary W.* (1971) 5 Cal.3d 296, 303.) "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; *People v. Wilkinson* (2004) 33 Cal.4th 821, 836.) The initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the challenged law. (*Cooley*, at p. 253.)

Halgas has not shown that he is similarly situated to a defendant who was placed in a state-run residential treatment program. Halgas was not incarcerated. His circumstances are not comparable to the defendant in *Mobley*, who could not afford to post bail. In that case, equal protection required the granting of conduct credits to avoid discrimination based on financial status. (*Moore, supra,* 226 Cal.App.3d at p. 786, citing *Broad*, *supra*, 165 Cal.App.3d at p. 884.) Likewise, Halgas is not similarly situated to the defendant in *Downey*, who was remanded to the custody of the county sheriff for housing while he was attending a custodial treatment program. (*Downey*, *supra*, 82 Cal.App.4th at p. 921.) Although Halgas was confined in a residential treatment facility, he was not in a prison drug program or a treatment program at the county jail. (*Id*. at p. 908.)

11

Finally, although Halgas may serve a longer sentence than he would have had he been accepted at SIP, sentencing disparities happen for any number of reasons.  As long as there is no showing that a defendant has been singled out deliberately for enhanced sentencing on the basis of some invidious criterion, the defendant cannot show an equal protection violation. (Cf. *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568-570; see *United States v. Batchelder* (1979) 442 U.S. 114, 125 [defendant has no constitutional right to choose the penalty scheme under which he will be sentenced].)  Here, Halgas was granted probation and could have avoided serving time in prison had he remained at Treatment One and complied with the program requirements.  He does not allege the denial of his placement at SIP was motivated by improper considerations.  Accordingly, his equal protection claim fails.

DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.


12